UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
DOCKET NO. 3:15-cv-00598-MOC

| | | |
|---|---|---|
| **STANLEY WILLIAM MCDONALD,** | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| Vs. | ) | ORDER |
| | ) | |
| **CAROLYN W. COLVIN,** | ) | |
| **Acting Commissioner of Social Security,** | ) | |
| | ) | |
| Defendant. | ) | |

**THIS MATTER** is before the court on Plaintiff's Motion for Summary Judgment (#7) and Defendant's Motion for Summary Judgment (#8). The matter has now been fully briefed and is ripe for review. Having carefully considered such motions and reviewed the pleadings, the court enters the following findings, conclusions, and Order.

**FINDINGS AND CONCLUSIONS**

I.     **ADMINISTRATIVE HISTORY**

On June 27, 2014, Plaintiff filed an application for Social Security Disability benefits, alleging disability since February 4, 2011 (Tr. 173-174). His claim was denied initially (Tr. 93-101) and again upon reconsideration (Tr. 103-108). Thereafter, he filed a written request for a hearing before an Administrative Law Judge ("ALJ") on January 9, 2015 (Tr. 109-110). A hearing was held before ALJ Michael D. Mance in Topeka, Kansas on June 2, 2015 (Tr. 42-66). By decision dated June 19, 2015, ALJ Mance found Plaintiff not disabled (Tr. 21-40). Plaintiff requested review of the ALJ's decision by the Appeals Council on July 28, 2015 (Tr. 16). The

Appeals Council denied the request for review on October 9, 2015 (Tr. 1-6), rendering the ALJ's decision the final decision of the Commissioner. See 20 C.F.R. § 404.981. Plaintiff has thus exhausted his available administrative remedies, and the case is now ripe for judicial review under Section 205(g) of the Social Security Act. See 42 U.S.C. § 405(g).

## II.    FACTUAL BACKGROUND

It appearing that the ALJ's findings of fact are supported by substantial evidence, the court adopts and incorporates such findings herein as if fully set forth.  Such findings are referenced in the substantive discussion which follows.

## III.    STANDARD OF REVIEW

The only issues on review are whether the Commissioner applied the correct legal standards and whether the Commissioner's decision is supported by substantial evidence. Richardson v. Perales, 402 U.S. 389, 390 (1971); Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990).  Review by a federal court is not de novo, Smith v. Schwieker, 795 F.2d 343, 345 (4th Cir. 1986); rather, inquiry is limited to whether there was "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Perales, 402 U.S. at 401 (internal citations omitted).  A court will "affirm the Social Security Administration's disability determination when an ALJ has applied correct legal standards and the ALJ's factual findings are supported by substantial evidence."  Mascio v. Colvin, 780 F.3d 632, 634 (4th Cir. 2015) (internal quotation marks omitted).   "Substantial evidence is that which a reasonable mind might accept as adequate to support a conclusion.  It consists of more than a mere scintilla of evidence but may be less than a preponderance."  Pearson v. Colvin, 810 F.3d 204, 207 (4th Cir. 2015) (citation and internal quotation marks omitted).  A court is not, however, to "reweigh conflicting

evidence[] [or] make credibility determinations" in evaluating whether a decision is supported by substantial evidence; rather, "[w]here conflicting evidence allows reasonable minds to differ," a reviewing court will defer to the Commissioner's decision. Hancock v. Astrue, 667 F.3d 470, 472 (4th Cir. 2012) (internal quotation marks omitted). The Fourth Circuit has explained the role of the district court when engaging in substantial evidence review as follows:

> the district court reviews the record to ensure that the ALJ's factual findings are supported by substantial evidence and that its legal findings are free of error. If the reviewing court decides that the ALJ's decision is not supported by substantial evidence, it may affirm, modify, or reverse the ALJ's ruling with or without remanding the cause for a rehearing. A necessary predicate to engaging in substantial evidence review is a record of the basis for the ALJ's ruling. The record should include a discussion of which evidence the ALJ found credible and why, and specific application of the pertinent legal requirements to the record evidence. If the reviewing court has no way of evaluating the basis for the ALJ's decision, then the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation.

Radford v. Colvin, 734 F.3d 288, 295 (4th Cir. 2013) (internal citations and quotations omitted). In the absence of meaningful factual development by the ALJ, a district court commits reversible error by "mining facts from the … record." Brown v. Colvin, 2016 WL 502918, *1 (4th Cir. February 9, 2016). Instead, courts are to "remand to avoid engaging in fact-finding 'in the first instance' and to allow the ALJ to further develop the record so that … meaningful judicial review [may occur]." Id. at *2 (quoting Radford, 734 F.3d at 296).

When considering cross-motions for summary judgment, the court "examines each motion separately, employing the familiar standard under [Fed. R. Civ. P. 56]." Desmond v. PNGI Charles Town Gaming, L.L.C., 630 F.3d 351 (4th Cir. 2011); Rossignol v. Voorhaar, 316 F.3d 516, 523 (4th Cir. 2003) (the court reviews each motion separately on its own merits in

order to "determine whether either of the parties deserves judgment as a matter of law") (internal citations omitted).

## IV.   SUBSTANTIAL EVIDENCE

### A.   Introduction

The court has read the transcript of Plaintiff's administrative hearing, closely read the decision of the ALJ, and reviewed the exhibits contained in the administrative record. The issue is not whether the court might have reached a different conclusion had it been presented with the same testimony and evidentiary materials, but whether the decision of the ALJ is supported by substantial evidence. For the reasons explained herein, the court finds that it is.

### B.   Sequential Evaluation

A five-step process, known as "sequential" review, is used by the Commissioner in determining whether a Social Security claimant is disabled. The Commissioner evaluates a disability claim under Title II pursuant to the following five-step analysis:

> a.   An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings;
>
> b.   An individual who does not have a "severe impairment" will not be found to be disabled;
>
> c.   If an individual is not working and is suffering from a severe impairment that meets the durational requirement and that "meets or equals a listed impairment in Appendix 1" of Subpart P of Regulations No. 4, a finding of "disabled" will be made without consideration of vocational factors;
>
> d.   If, upon determining residual functional capacity, the Commissioner finds that an individual is capable of performing work he or she has done in the past, a finding of "not disabled" must be made;
>
> e.   If an individual's residual functional capacity precludes the performance of past work, other factors including age, education, and past work experience, must be considered to determine if other work can be performed.

20 C.F.R. § 404.1520(b)-(f). The burden of proof and production during the first four steps of the inquiry rests on the claimant. Pass v. Chater, 65 F.3d 1200, 1203 (4th Cir. 1995). At the fifth step, the burden shifts to the Commissioner to show that other work exists in the national economy that the claimant can perform. Id. In this case, the Commissioner determined Plaintiff's claim at the fifth step of the sequential evaluation process.

### C. The Administrative Decision

With an alleged onset date of February 4, 2011, the issue before the ALJ was whether Plaintiff was disabled between that date through the date of decision. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since his alleged onset date (Tr. 26). At step two, the ALJ found that Plaintiff had severe impairments of depression, anxiety, posttraumatic stress disorder ("PTSD"), and substance abuse. Id. At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Tr. 27). The ALJ then found that Plaintiff has the residual functional capacity ("RFC") to perform a range of work at all exertional levels (Tr. 28). Plaintiff could occasionally climb ramps and stairs, but could never climb ladders, ropes, or scaffolds (Tr. 28). He could occasionally stoop, but should avoid concentrated exposure to unprotected heights, excessive vibrations, and hazardous machinery (Tr. 28). Plaintiff was further limited to unskilled work requiring only occasional contact with co-workers or the public; and could not perform high production rate jobs—although he could perform low and medium production rate jobs (Tr. 28 - 29). At step four, the ALJ found that Plaintiff was unable to perform his past relevant work as a telecommunications service manager, army supply clerk, or combat infantryman (Tr. 34). At step five, the ALJ found that Plaintiff

could perform jobs existing in significant numbers in the national economy, including representative unskilled jobs such as riveting machine operator, casting machine tender, circuit board laminator, burr grinder, garment sorter, and hospital products assembler. (Tr. 35). Accordingly, the ALJ found that Plaintiff was not disabled from February 4, 2011, through June 19, 2015, the date of the decision (Tr. 36).

### D.    Discussion

#### *1.  Plaintiff's Assignments of Error*

Plaintiff makes three assignments of error in this case. First, Plaintiffs argues that the ALJ failed to properly weigh the medical opinions in the record and failed to properly determine Plaintiff's RFC. Specifically, Plaintiff challenges the ALJ's assessment of his treating physician and non-examining consultants. Second, Plaintiff contends that the ALJ failed to properly consider the disability determination from the U.S. Department of Veterans Affairs ("VA"). Finally, Plaintiff alleges that the ALJ failed to properly evaluate his credibility. The court will address each issue <u>seriatim</u>.

#### *2.  Weight to Medical Opinion Evidence*

Plaintiff argues that the ALJ erred by giving little weight to treating physician Dr. Huet, a board-certified psychiatrist who began treating Plaintiff on September 18, 2013 (Tr. 877, 1037).

Pursuant to governing regulations, an ALJ must evaluate and weigh medical opinions, regardless of their source, with the following factors in mind: "(1) whether the physician has examined the applicant, (2) the treatment relationship between the physician and the applicant, (3) the supportability of the physician's opinion, (4) the consistency of the opinion with the record, and (5) whether the physician is a specialist." <u>Johnson v. Barnhart</u>, 434 F.3d 650, 654

(4th Cir. 2005); <u>see also</u> 20 C.F.R. § 404.1527 (2005). Medical opinions constitute statements from physicians and psychologists, as well as other acceptable medical sources, reflecting judgments about the nature and severity of the claimant's impairment, including the claimant's symptoms, diagnosis, and prognosis, what the claimant can still do despite his or her impairment, and the claimant's physical or mental restrictions. 20 C.F.R. § 404.1527(a)(2). An ALJ must evaluate every medical opinion in the record. <u>See</u> 20 C.F.R. § 404.1527(c).  Under the governing regulations, "a treating physician's opinion on the nature and severity of the claimed impairment is entitled to controlling weight if it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the record." <u>Mastro v. Apfel</u>, 270 F.3d 171, 178 (4th Cir. 2001) (citing 20 C.F.R § 416.927). Thus, "[b]y negative implication, if a physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight." <u>Craig v. Chater</u>, 76 F.3d 585, 590 (4th Cir. 1996). In such circumstances, the ALJ has discretion to give less weight to the testimony of a treating physician in the face of persuasive contrary evidence. <u>Mastro v. Apfel</u>, 270 F.3d 171, 178 (4th Cir. 2001).

A "treating physician" is a physician who has observed the Plaintiff's condition over a prolonged period of time.  <u>Mitchell v. Schweiker</u>, 699 F.2d 185, 187 (4th Cir. 1983). "Although the treating physician rule generally requires a court to accord greater weight to the testimony of a treating physician … The ALJ may choose to give less weight to the testimony of a treating physician if there is persuasive contrary evidence." <u>Hunter v. Sullivan</u>, 993 F.2d 31, 35 (4th Cir. 1992), as amended (May 5, 1993) (internal citations omitted). If the ALJ does not accord controlling weight to a treating source's opinion, he must "give good reasons" for doing so. 20

C.F.R. §§ 404.1527(c)(2); 416.927(c)(2). The ALJ's explanation of these "good reasons" "must contain specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." SSR 96-2P, 1996 WL 374188, at *5 (July 2, 1996). "[F]ederal courts have remanded decisions of the Commissioner when they fail to articulate 'good reasons' for discrediting the opinion of a treating source." Newhart v. Colvin, 6:13-CV-01606, 2014 WL 1330929 (S.D.W. Va. Mar. 31, 2014). See also Slayton v. Apfel, 175 F.3d 1016, 1999 WL 152614, at *3 (4th Cir. 1999) (unpublished table opinion) (remand appropriate where "ALJ did not indicate the weight given to the findings of each of the treating physicians"); Stroup v. Apfel, 205 F.3d 1334, 2000 WL 216620, at *6 (4th Cir. 2000) (unpublished table opinion) ("Because the ALJ did not explain adequately why the reports of [other physicians] were a sufficient basis for rejecting [the treating physician]'s opinion, we cannot determine whether the ALJ properly rejected [the] treating physician's opinion 'as inconsistent with the other substantial evidence in the record.' We therefore must remand the case to the ALJ for a new hearing.'" (quoting 20 C.F.R. § 404.1527)).

Whereas courts often accord greater weight to the testimony of a treating physician because the treating physician has examined the claimant and has a historical treatment relationship, see Johnson, 434 F.3d at 654 (citing Mastro v. Apfel, 270 F.3d 171, 178 (4th Cir. 2001)), no such deference is required for a consultative exam. See generally SSR 96–2P, 1996 WL 374188, at *2 (July 2, 1996). At issue in this case are the opinions of three non-examining state agency medical consultants, which are nontreating medical sources. See 20 C.F.R. §

404.1502 ("Nontreating source means a physician, psychologist, or other acceptable medical source who has examined you but does not have, or did not have, an ongoing treatment relationship with you. The term includes an acceptable medical source who is a consultative examiner for us, when the consultative examiner is not your treating source."). While the ALJ may choose to give "great weight" to the opinion of a nontreating source, an ALJ is not obligated to do so. See SSR 96–2P. Nonetheless, state agency consultants are considered experts in the Social Security disability programs and their opinions can be given great weight if supported by the evidence. See 20 C.F.R. § 404.1527(e)(2)(i); SSR 96-6p, 1996 WL 374180, at *2-3. When well-supported by the evidence of record, a non-examining physician's opinion may be given greater weight than that of an examining source. See 20 C.F.R. § 404.1527(c), (e).

Plaintiff argues that the ALJ's findings as to Dr. Huet's opinions were too vague to constitute adequate reasoning for rejecting his medical opinion, and that he erred in discounting such opinions in favor of the non-treating state agency medical consultants. Dr. Huet's relevant findings are as follows. In a narrative regarding Plaintiff dated July 9, 2014, Dr. Huet stated that Plaintiff was diagnosed with major depressive disorder, recurrent, moderate; PTSD, chronic; unspecified anxiety disorder; mild neurocognitive disorder; and severe alcohol use disorder that met all the criteria required for such diagnoses under the Diagnostic and Statistical Manual of Mental Disorders, 5th Ed. ("DSM-5") (Tr. 1042). His presenting symptoms included mood swings, irritability, depression, and insomnia. Treatment included both psychotropic medications and individual and group therapy, but medications provided "[n]o benefit…thus far." Id. The doctor stated that his opinions on Plaintiff's mental limitations would be detailed in an additional report. Id. In a Mental Impairment Questionnaire completed the same day, Dr. Huet expanded on

his findings in the narrative (Tr. 1037-1041). He opined Plaintiff is not a malingerer (Tr. 1037). Plaintiff's signs and symptoms included feelings of guilt or worthlessness; hostility or irritability; evidence of mood disturbance with insomnia, increased appetite, and occasional suicidal ideation; obsessions or compulsions; difficulty thinking or concentrating; easy distractibility; poor immediate, recent, and remote memory; intrusive recollections of a traumatic experience; generalized or persistent anxiety; recurring panic attacks; vigilance and scanning; anhedonia/pervasive loss of interests; appetite disturbances/weight change; decreased energy; impulsivity or damaging behavior; social withdrawal or isolation; disorientation to the date; auditory hallucinations; and many nocturnal awakenings (Tr. 1038).

Dr. Huet opined that as a result of his conditions, Plaintiff is markedly limited (defined as symptoms constantly interfering with the activity or more than 2/3 of an 8-hour workday) in his ability to remember locations and work-like procedures; understand, remember, and carry out detailed instructions; maintain attention and concentration for extended periods; perform activities within a schedule and consistently be punctual; complete a workday without interruptions from psychological symptoms; perform at a consistent pace without rest periods of unreasonable length or frequency; accept instructions and respond appropriately to criticism from supervisors; respond appropriately to workplace changes; travel to unfamiliar places or use public transportation; and set realistic goals (Tr. 1040). He also opined that Plaintiff is moderately to markedly limited (defined as symptoms frequently interfering with the activity or 1/3 to 2/3 of the day) in his ability to understand, remember, and carry out one-to-two step instructions; sustain ordinary routine without supervision; work in coordination with or near others without being distracted by them; make simple work-related decisions; interact

appropriately with the general public; ask simple questions or request assistance; get along with co-workers or peers without distracting them; maintain socially appropriate behavior; adhere to basic standards of neatness; be aware of hazards and take appropriate precautions; and make plans independently. Id. Dr. Huet also estimated Plaintiff would miss work more than three times per month (Tr. 1041).

In his written decision, the ALJ discussed Dr. Huet's medical opinions and assigned them "little weight," finding them inconsistent with the mental status examinations in the treatment records and with Plaintiff's activities of daily living (Tr. 32). Plaintiff notes that though the ALJ gave little weight to this treating physician, he gave "significant weight" to the opinions from the non-examining state agency psychologists (Tr. 31).

Here, the ALJ stated that he had considered the medical opinion evidence in accordance with the requirements of 20 C.F.R. § 404.1527 and SSRs 96-2p, 96-5p, 96-6p, and 06.3p (Tr. 29). After noting that Dr. Huet was a treating physician, the ALJ explained his reasons for rejecting Dr. Huet's medical opinion. First, he found that Dr. Huet's opinion was not supported by the weight of the evidence (Tr. 32 (citing Exhibit 10F, Dr. Huet's Mental Impairment Questionnaire, (Tr. 1037-41)). The ALJ explained that Plaintiff's activities of daily living were largely unhindered. The ALJ had previously noted that Plaintiff reported that he is able to perform the multiple and varied leisure and self-care activities independently, including personal care, grooming, doing laundry, exercising twice a day, managing finances, using a computer at the library, and going to bars (Tr. 27-28). The ALJ also noted that Plaintiff did not appear to have any difficulty behaving appropriately with treatment providers or being in public areas (Tr. 28). While Plaintiff points to some of his statements regarding daily activities not specifically

cited by the ALJ—that he will "try and walk" and then have something to eat before he goes to the library to check his e-mail, that he watches DVDs, that he was asked not to come back to a volunteer job after he lost his temper, and that he has "bad days" where he does not talk to anyone and has to try and calm himself down, (Tr. 51-52, 58-59)—the court does not find such daily activities, even if accepted as accurate, are inconsistent with the ALJ's finding that Plaintiff's daily activities are "largely unhindered" (Tr. 32).

Second, the ALJ noted that mental status examinations performed by Dr. Huet did not present seriously abnormal findings that would have been consistent with a conclusion that Plaintiff had marked limitations in his ability to perform multiple basic work activities and would miss more than three days a month (Tr. 32). The ALJ noted that while Dr. Huet opined that Plaintiff's symptoms constantly interfered with the ability to remember locations and work-like procedures, (Tr. 32, 1040), his progress notes stated that Plaintiff's short-term memory was only "somewhat impaired" and his long term memory was "slightly impaired" (Tr. 32, 884). The ALJ further explained that those mental status findings were not reproduced by the majority of examinations that other medical sources administered, citing numerous specific pages in the record documenting those other mental status examinations (Tr. 32). Perhaps most significantly, the ALJ noted that Dr. Huet failed to support his opinions with any clinical findings at all (Tr. 32). In the medical opinion form that he completed for Plaintiff, Dr. Huet wrote "N/A" in the section asking for identification of clinical findings that would support his diagnoses and assessment (i.e. mental status examinations or psychological testing) (Tr. 32, 1039). Thus, in addition to being inconsistent with his own and others' treatment notes, Dr. Huet's medical opinion indicates that it is not based on any medical evidence. See 20 C.F.R. § 404.1527(c)(3)

("The more a medical source presents relevant evidence to support an opinion, particularly medical signs and laboratory findings, the more weight we will give that opinion.")

Finally, in explaining why he gave little weight to Dr. Huet's opinion, the ALJ correctly noted that Dr. Huet's statement that Plaintiff "is unable to do any full time competitive work" is not a medical opinion under the Commissioner's regulations, but is an administrative finding reserved to the Commissioner to make (Tr. 32, 1042). See id. at § 404.1527(d)(1).

Plaintiff also argues that the assignment of "great weight" to the state agency medical consultants was in error, arguing that their assessment of the medical evidence before them was of limited probative value because it is unclear what records they assessed and they were issued almost one year before the ALJ's decision. The ALJ explained, however, that although some evidence was added to the record since the state agency consultants' review thereof, that evidence was cumulative of what was already contained in the case record (Tr. 32). The ALJ noted that the additional evidence did not document an appreciable worsening in Plaintiff's condition after the doctors rendered their opinions (Tr. 32). Significantly, Plaintiff neither alleges nor demonstrates any worsening in his condition after the date of these doctors' opinions. While Plaintiff takes issue with the fact that it is not clear whether the state agency consultants reviewed Dr. Huet's opinion, such fact is irrelevant since the court has found substantial evidence to support discounting such opinion. Moreover, the court finds no error in the weight assigned to the non-treating consultants. The ALJ explained that he gave the state agency consultants significant weight because the opinions were consistent with Plaintiff's longitudinal medical history and self-reported daily activities (Tr. 32). He also explained that the opinions were accompanied by detailed narratives explaining what evidence the consultants relied on

when coming to their conclusions (Tr. 32). See Lucas v. Astrue, No. 5:12-cv-131, 2012 WL 6917052, *6 (E.D.N.C. Dec. 28 2012) (upholding ALJ's decision where the ALJ "accorded significant weight…to the opinions of state agency consultants and his decision is supported by substantial evidence") (report and recommendation adopted by 2013 WL 239195 (E.D.N.C. Jan. 22, 2013)); see also Baldwin v. Colvin, No. 2:12-cv-76, 2014 WL 3939213 (W.D.N.C. Aug. 12, 2014) ("Under Social Security Administration regulations, the expert opinions of the examining medical sources and state agency reviewing doctors may amount to substantial evidence where they represent a reasonable reading of the relevant medical evidence."); see also Gunter v. Colvin, No. 1:09-cv-0384, 2014 WL 1757306 (M.D.N.C. April 30, 2014) (finding that the opinion of the State agency physician constituted substantial evidence in support of the ALJ's decision).

As noted above, it is not the role of the court to re-weigh conflicting evidence in the record, Hancock v. Astrue, 667 F.3d 470, 472 (4th Cir. 2012), but only to determine whether the ALJ's decision was supported by substantial evidence. Here, the court finds no error in the ALJ's assignment of weight to Dr. Huet's opinions and finds that the ALJ adequately addressed such opinion in accordance with governing law. He explained the treatment relationship, analyzed the supportability of the opinion based on the evidence presented, and compared it to other opinion evidence of record for consistency. See Johnson v. Barnhart, 434 F.3d 650, 654 (4th Cir. 2005); see also 20 C.F.R. § 404.1527 (2005). Similarly, the court finds no error in the weight assigned to the state agency medical consultants. Plaintiff's first assignment of error is overruled.

### 3. Consideration of VA Disability Determination

Second, Plaintiff argues that the ALJ erred by failing to properly consider the VA

Disability Determination. Here, the ALJ gave "little weight" to the disability rating of 100% (Tr. 33, 196), meaning that Plaintiff is entitled to 100% of service-connected disability benefits. The ALJ specifically noted that he was not bound by the determinations of other administrative agencies, including the VA. The court notes that while a VA disability rating should not be disregarded, McCartey v. Massanari, 298 F.3d 1072, 1075–76 (9th Cir. 2002), "a determination made by another agency that you are disabled ... is not binding on [the Commissioner]." 20 C.F.R. § 404.1504. Regarding the amount of deference to be afforded the VA disability rating, the Fourth Circuit held in Bird v. Comm'r of Soc. Sec. Admin., 699 F.3d 337 (4th Cir. 2012):

> in making a disability determination, the SSA must give substantial weight to a VA disability rating. However, because the SSA employs its own standards for evaluating a claimant's alleged disability, and because the effective date of coverage for a claimant's disability under the two programs likely will vary, an ALJ may give less weight to a VA disability rating when the record before the ALJ clearly demonstrates that such a deviation is appropriate.

Id. at 343. "Remand is appropriate when an ALJ fails to adhere to Bird's directive to give substantial weight to a VA disability rating decision unless the record demonstrates that lesser weight is warranted." Tremble v. Colvin, No. 2:15-CV-00001-D, 2016 WL 484214, at *9 (E.D.N.C. Jan. 20, 2016), report and recommendation adopted, No. 2:15-CV-1-D, 2016 WL 528057 (E.D.N.C. Feb. 8, 2016) (citing Williams v. Colvin, No. 5:13–CV–571–FL, 2015 WL 73954, at *3 (E.D.N.C. Jan. 6, 2015)).

Here, the ALJ's statement that the VA disability rating is of "little probative value" does not appear to align with the Fourth Circuit's holding and reasoning in Bird. See id. ("the VA and Social Security programs serve the same governmental purpose of providing benefits to persons unable to work because of a serious disability…[b]oth programs evaluate a claimant's ability to perform full-time work in the national economy on a sustained and continuing basis; both focus

on analyzing a claimant's functional limitations; and both require claimants to present extensive medical documentation in support of their claims."). Nonetheless, the ALJ stated in his decision that the "most significant[]" factor in his decision to give little weight to the VA disability rating was the fact that it was "simply not supported by the evidence of record" (Tr. 33). The ALJ reiterated that Plaintiff had not presented with abnormal clinical findings supportive of a finding that he is totally disabled, and that his activities of daily living are essentially unhindered. Id. The ALJ thus noted that while he "fully considered" the VA disability rating, he gave it little weight because it was inconsistent with the evidence of the record. On review, the court finds that the ALJ satisfied the requirements articulated in Bird. See, e.g, Elmore v. Colvin, No. 15CV759, 2016 WL 3453422, at *4 (M.D.N.C. June 20, 2016) (noting that where the ALJ found that the record did not support the VA disability rating, "this is not a case where the ALJ failed to explain the consideration given to the VA rating...the ALJ considered Plaintiff's VA rating in light of the entire record and gave proper reasons to afford it less weight."); Mills v. Colvin, No. 5:13-CV-432-FL, 2014 WL 4055818, at *3 (E.D.N.C. Aug. 14, 2014) (affirming ALJ's deviation from the 90% VA disability rating where the ALJ explained how it conflicted with the ALJ's assessment of the medical evidence in the record and gave specific examples). Plaintiff's second assignment of error is therefore overruled.

### 4.  Credibility Assessment

Finally, Plaintiff argues that the ALJ erred in making his credibility assessment of Plaintiff. However, though Plaintiff seems to generally take issue with the ALJ's findings as to his mental limitations, Plaintiff does not articulate exactly how the credibility determination prejudiced him. The court can therefore overrule his third assignment of error on these grounds

alone. See Camp v. Massanari, 22 Fed.Appx. 311, 2001 WL 1658913, at *1 (4th Cir. 2001)

(finding that an error by the administrative law judge was harmless where the plaintiff "made no

showing of prejudice"); Hose v. Colvin, No. 1:15CV00662, 2016 WL 1627632, at *6 (M.D.N.C.

Apr. 22, 2016) ("because the ALJ otherwise supported her credibility analysis with substantial

evidence, as discussed in more detail below, the ALJ's error remains harmless") (collecting

cases). However, even assuming that Plaintiff had identified some way in which the credibility

determination prejudiced him, the court finds no error in the ALJ's analysis.

     In reviewing Plaintiff's claim regarding the ALJ's credibility determination, the court

notes at the outset that because the ALJ "had the opportunity to observe the demeanor and to

determine the credibility of the claimant, the ALJ's observations concerning these questions are

to be given great weight." Shively v. Heckler, 739 F.2d 987, 989 (4th Cir. 1984). The correct

standard and method for evaluating claims of pain and other subjective symptoms has developed

from the Fourth Circuit's decision in Hyatt v. Sullivan, 899 F.2d 329 (4th Cir. 1990) (Hyatt III),

which held that "[b]ecause pain is not readily susceptible of objective proof . . . the absence of

objective medical evidence of the intensity, severity, degree or functional effect of pain is not

determinative." Id. at 336. A two-step process for evaluating such a subjective complaint was

developed by the Fourth Circuit in Craig v. Chater, 76 F.3d 585 (4th Cir. 1996). This two-step

process for evaluating subjective complaints corresponds with the Commissioner's relevant

rulings and regulations. See 20 C.F.R. § 404.1529; SSR 96-7p.

     The first step requires the ALJ to determine whether there is "objective medical evidence

showing the existence of a medical impairment which could reasonably be expected to produce

the actual pain, in the amount and degree, alleged by the claimant." Craig, 76 F.3d at 594. If the

ALJ finds such an impairment, he must then proceed to the second step and assess "the intensity and persistence of the claimant's pain, and the extent to which it affects [his] ability to work." <u>Id.</u> at 595; <u>see</u> <u>also</u> 20 C.F.R. § 416.929(c)(1), 404.1529(c)(1); SSR 96-7p. The ALJ must consider the following: (1) a claimant's testimony and other statements concerning pain or other subjective complaints; (2) claimant's medical history and laboratory findings; (3) any objective medical evidence of pain; and (4) any other evidence relevant to the severity of the impairment. <u>Craig</u>, 76 F.3d at 595; 20 C.F.R. § 404.1529(c); SSR 96-7p. The term "other evidence relevant" includes: a claimant's activities of daily living; the location, duration, frequency, and intensity of their pain or other symptoms; precipitating and aggravating factors; the type, dosage, effectiveness, and side effects of medications taken to alleviate their pain and other symptoms; treatment, other than medication, received; and any other measures used to relieve their alleged pain and other symptoms. <u>Craig</u>, 76 F.3d at 595. If the ALJ does not find a claimant's statements to be credible, the ALJ must provide specific reasons supported by the evidence. 20 C.F.R. § 404.1529(c)(4); SSR 96-7p; <u>Hammond v. Heckler</u>, 765 F.2d 424, 426 (4th Cir. 1985) ("credibility determinations . . . should refer specifically to the evidence informing the ALJ's conclusion"). "This duty of explanation is always an important aspect of the administrative charge, and it is especially crucial in evaluating pain, in part because the judgment is often a difficult one, and in part because the ALJ is somewhat constricted in choosing a decisional process." <u>Hammond</u>, 765 F.2d at 426 (internal citations omitted). Additionally, to the extent that the ALJ uses what has been characterized by the Fourth Circuit as "boilerplate language" on the credibility assessment, the court notes that such use of boilerplate language alone does not suffice to inform the reviewing court of the specific evidence considered in determining a

claimant's credibility. See Mascio v. Colvin, 780 F.3d 632, 636 (4th Cir. 2015). However, such use constitutes harmless error if the ALJ properly analyzes credibility elsewhere in his decision. Id.

Here, at the first step of Craig, the ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms (Tr. 30). At the second step, the ALJ determined that Plaintiff's statements "concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible" for the reasons stated in the decision. Id. As noted above, the ALJ is tasked with the duty of providing specific reasons for discrediting a claimant's testimony in this manner. The court finds that the ALJ satisfied that requirement in this case. First, the ALJ recounted in detail Plaintiff's testimony about his daily activities—noting that Plaintiff reported that he is able to perform the multiple and varied leisure and self-care activities independently (Tr. 27, 31). The ALJ also acknowledged Plaintiff's descriptions of his symptoms by considering Plaintiff's complaints of increasing depression, getting stressed quickly, sleeping less than 4 hours a night, experiencing nightmares, inability to concentrate more than a few minutes at a time, flashbacks to combat experience, a short temper, performing tasks in even numbers because of obsessive-compulsive disorder, and sleep apnea (Tr. 29). In addition, the ALJ noted that Plaintiff was prescribed psychotropic medications (Tr. 30). The ALJ considered Plaintiff's allegations about side effects of those medications, including alleged headaches, dizziness, nervousness, diarrhea, difficulty sleeping, vomiting, and frequent urination (Tr. 30). Finally, the ALJ considered the records from other treatments used— including group psychotherapy, individual psychotherapy, and monthly follow-up visits with his treating psychiatrist (Tr. 30). Thus, the ALJ fully considered the relevant factors for assessing

credibility. See Craig, 76 F.3d at 595; 20 C.F.R. § 404.1529(c); SSR 96-7p.

Moreover, the ALJ fully explained, with multiple citations to the evidence of record, why he did not find Plaintiff's allegations about the effects of his impairments fully credible. He noted that the medical evidence did not document persistently abnormal clinical findings reasonably consistent with Plaintiff's allegations—with citations to numerous pages in the record to support his conclusions (Tr. 30). In addition, the ALJ noted that Plaintiff was not fully forthcoming about his alcohol use. (Tr. 31, 670). The ALJ also explained that even when Plaintiff was pervasively abusing alcohol, there were few abnormalities present—but that Plaintiff was noted to do "fairly well" when he decreased his alcohol intake (Tr. 30). For instance, in April 2012 Plaintiff indicated that he last used alcohol in February 2011 (Tr. 683), but in November 2013, Plaintiff stated that he had been drinking since college and that his longest period of sobriety was only 2.5 months (Tr. 642). In another instance, Plaintiff said that his longest period of sobriety was 6 months, while he was deployed (Tr. 721 - 22).

The ALJ further reasoned that Plaintiff's mild to moderately abnormal medical signs warranted only the conservative treatment that he received, and that his doctors had not recommended him for inpatient psychiatric treatment (Tr. 30). See Jones v. Astrue, No. 1:11-cv-00357, 2013 WL 228118 (N.D. In. Jan. 22, 2013); Caudill v. Astrue, No. 10-303, 2010 WL 4537050 (W.D. Pa. Nov. 2, 2010); Cross v. Astrue, No. 6:08—35, 2008 WL 3077736 (E.D. Ky., Aug.4, 2008) (acknowledging lack of inpatient treatment as one valid factor to consider, along with many others, when assessing the degree to which a mental impairment interferes with the ability to work). The ALJ noted several other consistencies between Plaintiff's allegations and the evidence of record as well. For instance, the ALJ noted that Plaintiff complained of multiple

medication side effects, but that the record did not document such side effects (Tr. 30). He further noted that, although Plaintiff claimed that his impairments prevented him from being able to work, he was not working because he had been laid off (Tr. 31, 484). Indeed, when discussing a possible job as a security monitor in March 2013, Plaintiff stated, "yeah, I can do this job no problem" (Tr. 679). Moreover, the ALJ noted that Plaintiff gave up looking for a job shortly before he filed for disability benefits (Tr. 31, 621, 646). The ALJ further considered that Plaintiff was actively job seeking during the period at issue, and that he had been offered multiple jobs, but turned them down (Tr. 31, 677, 681). The ALJ thus noted that the record strongly indicates that Plaintiff perceives himself as someone capable of working, but who has instead opted to pursue social security benefits. See Lovell v. Colvin, 137 F. Supp. 3d 347, 354 (W.D.N.Y. 2015) (noting in credibility assessment that "vocational rehabilitation reports show [claimant] was seeking a job at a light to medium exertional level, which the ALJ properly determined suggests plaintiff felt he was capable of working at that level. As such, the ALJ did not abuse its discretion in determining that plaintiff's testimony was not entirely credible"); Ditsworth v. Colvin, 982 F. Supp. 2d 935, 941 (N.D. Iowa 2013) (noting in credibility assessment that claimant applied for numerous jobs after her alleged onset date that would have required a great deal of standing and walking, conflicting with allegations of pain).

Finally, the ALJ properly observed Plaintiff's behavior at the hearing as another factor he considered (Tr. 31). He noted that Plaintiff was able to fully and actively participate in the hearing without any discernable interference from his purportedly disabling ailments. Id.

Considering all these factors together, the court finds no error in the ALJ's decision not to find Plaintiff's statements about the intensity, persistence, and limiting effects of his symptoms completely credible. The court will therefore overrule Plaintiff's third assignment of error.

**E.     Conclusion**

The undersigned has carefully reviewed the decision of the ALJ, the transcript of proceedings, Plaintiff's motion and brief, the Commissioner's responsive pleading, and Plaintiff's assignments of error.  Review of the entire record reveals that the decision of the ALJ is supported by substantial evidence.  See Richardson v. Perales, 402 U.S. 389, 390 (1971); Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990).  Finding that there was "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," Perales, 402 U.S. at 401 (internal citations omitted), Plaintiff's Motion for Summary Judgment will be denied, the Commissioner's Motion for Summary Judgment will be granted, and the decision of the Commissioner will be affirmed.

**ORDER**

**IT IS, THEREFORE, ORDERED** that:

    (1) the decision of the Commissioner, denying the relief sought by Plaintiff, is

        **AFFIRMED**;

    (2) Plaintiff's Motion for Summary Judgment (#7) is **DENIED**;

    (3) Defendant's Motion for Summary Judgment (#8) is **GRANTED**; and

    (4) this action is **DISMISSED**.

Signed: July 29, 2016

Max O. Cogburn Jr.
United States District Judge